UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DENISE WRIGHT,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-09-3015-JPH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on December 18, 2009. (Ct. Recs. 22, 25). Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security ("Commissioner"). On December 8, 2009, plaintiff filed a rely (Ct. Rec. 27). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 25) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 22.)

**JURISDICTION**

Plaintiff protectively filed an application for supplemental security income (SSI) benefits on March 8, 2006, alleging onset as of January 2, 1994 (Tr. 57, 97), meaning she had to establish

disability as of her application date of March 8, 2006. The application was denied initially and on reconsideration (Tr. 31-32, 35-38).

A hearing was held August 19, 2008, before Administrative Law Judge (ALJ) R. S. Chester. Plaintiff, represented by counsel, and vocational expert William R. Wright [not related to plaintiff] testified (Tr. 281-310). On September 18, 2008, the ALJ issued his decision (Tr. 13-22) finding plaintiff not disabled as defined by the Act (Tr. 22). On December 12, 2008, the Appeals Council denied review (Tr. 2-5). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on February 9, 2009 (Ct. Recs. 2,4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both parties, and are summarized here.

Plaintiff was 53 years old at the hearing (Tr. 286). She has a high school education, one year of business college, and, in the fall of 2003 and winter of 2004, completed two quarters of community college in the field of allied health.[1] Plaintiff has worked at Kmart, at a shelter as a kitchen helper, and as a teacher’s aide (Tr. 90, 209, 211, 291, 303-304).

Plaintiff testified she last worked in May of 2002, for four

[1]Plaintiff described the allied health courses as medical assisting, coding, and billing (Tr. 289-290).

hours a day as a kitchen helper at the Union Gospel Mission. The job was required by DSHS for plaintiff's receipt of benefits for her son; however, when he was sent to juvenile prison in April of 2002, he no longer qualified for benefits (Tr. 290-291). Plaintiff lives with her partner, her 23 year old son, and her mother (Tr. 288). She states she is unable to work now due to responsibilities "with my mother," partner, and son (Tr. 292). She helps care for her granddaughter, who was almost six years old as of the hearing; does all of the driving, as she is the only household member who drives; runs all of the errands, and does "everything outside of the home" (Tr. 292-293). Plaintiff protectively alleges onset as of March 8, 2006, due to mental impairments (Tr. 97).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether

plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.

*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since onset (Tr. 15). At steps two and three, the ALJ found plaintiff suffers from a depressive mood disorder/dysthymic disorder, recurrent, and a personality disorder, impairments that are severe but which do not alone or combination meet or medically equal a Listing impairment (Tr. 15-17). The ALJ found plaintiff less than completely credible (Tr. 19). At step four, relying on the VE, the ALJ found plaintiff's RFC for a range of work at all exertion levels (limited only by psychological impairments) is consistent with the ability to perform her past work as a kitchen helper. Although he found plaintiff not disabled at step four (Tr. 19-20), the ALJ went on to perform an alternative step five analysis. Again relying on the vocational expert, ALJ Chester found there are other jobs plaintiff could perform, including custodian, mail clerk, and motel clerk (Tr. 21). Accordingly, the ALJ found plaintiff is not disabled as defined by the Social Security Act (Tr. 22).

**ISSUES**

Plaintiff contends the Commissioner erroneously assessed the evidence from treating and examining sources, as well as her credibility (Ct. Rec. 23 at 11, 17). She alleges these errors led the ALJ to ask the VE an incomplete hypothetical, resulting in error at step five (Ct. Rec. 23 at 18-19). Additionally, plaintiff alleges the ALJ erred by failing to determine whether her part-time job as a kitchen helper qualified as relevant past work because she earned less than the regulatory presumptive amount (Ct. Rec. 23 at 17-18).

The Commissioner asks the Court to affirm the decision

because, he asserts, it is supported by the evidence and free of error. (Ct. Rec. 26 at 5).

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected

only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

Plaintiff alleges the ALJ improperly rejected the opinions of treating and examining professionals at "Tr. 138, 142, 146, 150, 158, 162 and 236," unhelpfully, without naming the professionals or citing the dates of the opinions (Ct. Rec. 23 at 12). The Commissioner answers to the extent the ALJ rejected some of the opinions, he gave specific, legitimate reasons supported by the record (Ct. Rec. 26 at 10-13).

Plaintiff refers to **Tr. 138** (Ct. Rec. 23 at 12), a March 24, 2004, assessment by Michael Cates, M.Ed., two years before onset. He opined counseling and psychiatric services were indicated but just begun, plaintiff currently took no medication, and more time was needed to assess progress. He opined mental health treatment was likely to restore plaintiff's ability to work (Tr. 138-139).

Plaintiff refers to **Tr. 142** (Ct. Rec. 23 at 12), an opinion by Peggy Champoux, MSW, on June 3, 2004, about three months later.

She diagnosed dysthymia. Plaintiff had been seen in therapy three times. Ms. Champoux assessed marked and moderate limitations expected to last no more than nine months (Tr. 141-143).

Plaintiff refers to **Tr. 146** (Ct. Rec. 23 at 12), an opinion three months later, on September 16, 2004, by Ms. Champoux indicating: (1) no marked and five moderate limitations; (2) plaintiff not currently on medication; (3) when she is ready to work on changes plaintiff can reapply for services, and (4) has said she could probably get a part-time job. Ms. Champoux saw plaintiff as employable (Tr. 145-147).

Plaintiff refers to **Tr. 150** (Ct. Rec. 23 at 12), an opinion after another three months, on December 30, 2004, by Mr. Cates. He diagnosed major depressive episode, severe, and dysthymic disorder. Mr. Cates assessed six marked and seven moderate limitations, noted medication was not currently prescribed, plaintiff was not currently in mental health treatment, and suggested plaintiff contact a primary care physician for "medication consideration" (Ct. Rec. 149-151).

Plaintiff refers to **Tr. 158** (Ct. Rec. 23 at 12), an assessment about five months before onset, on October 27, 2005. Christopher Clark, M.Ed., observed treatment to date consisted of "attending scheduled assessment," plaintiff not receiving services, off of medication several months, and additional tests or consultations needed. Mr. Clark assessed four marked and five moderate limitations (Tr. 158-159).

Plaintiff refers to **Tr. 162** (Ct. Rec. 23 at 12), an assessment by Mr. Clark four months later, on February 7, 2006 - a month before onset. He again indicates treatment results to date

consist of “attended assessment as scheduled” and plaintiff is not receiving services (Tr. 163). Mr. Clark assessed seven marked and three moderate limitations (Tr. 161-162).

Plaintiff refers to Tr. **236** (Ct. Rec. 23 at 12), the assessment two years later by Dick Moen, MSW. Mr. Moen assessed four marked and three moderate limitations, but noted plaintiff was not receiving mental health services (Tr. 235-237).

Significantly, plaintiff opined six months after onset, “I need to get a job” (Tr. 204).

To the extent the ALJ rejected some of these opinions, his reasons are legitimate, specific, and supported by substantial evidence in the record. *See Lester v. Chater*, 81 F. 3d 821, 830-831 (9th Cir. 1995)(holding that the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician’s contradicted opinion). ALJ Chester weighed the records of plaintiff’s primary treating physician, Debra Gould, M.D., in evaluating the evidence:

> . . . for one year preceding her alleged onset date of March 2006, her primary complaint was insomnia, and while she reported depression, both her insomnia and depressive complaints were clearly and directly related to familial dysfunction with multiple familial generations living in the same household. . . while she reported depression, she did not express or endorse any depressive symptomology, instead she simply just cited various familial situational disruptions and crisis.

(Tr. 15, referring to Exhibit B1F/70-78 at Tr. 173-181).

A few examples of the record pre-onset cited by the ALJ include Dr. Gould’s records dated March 15, 2005, a year before onset, noting plaintiff sleeps better since taking prozac, has a little more energy, and is considering applying for DVR; follow through with counseling (Tr. 180). On November 23, 2005,

plaintiff said she last took prozac in August of 2005 (Tr. 176). She described her son as having "major mental illness" (Tr. 176 - December 23, 2005); and a domestic violence incident involving her partner, Jimmy (Tr. 177 - July 1, 2005).

The ALJ also weighed the opinion of examining psychologist Mr. Toews on May 12, 2006 (Tr. 125-128), two months after onset (Tr. 15-16). Plaintiff indicated "she continues to be depressed by family and situational problems that have gone on for years," and, as the ALJ notes, stated her mental state is better "when she is free of family problems." (Tr. 15, referring to Tr. 125). The ALJ points out reported symptoms (low energy, lack of motivation, concentration/memory problems) were directly related to plaintiff's youngest son, described to Mr. Toews as a "night owl" who disturbs the household all night (Tr. 15 referring to Tr. 126). Plaintiff was taking prozac but, in Mr. Toews' opinion, needed counseling (Tr. 126). He assessed a GAF of 60-65 (Tr. 128). Perhaps most significantly, the ALJ notes the activities plaintiff reported to Mr. Toews are inconsistent with disabling impairment, as these include planning and preparing meals, housecleaning, laundry, driving, shopping, attending church, and babysitting a grandson (Tr. 16, referring to Tr. 127).

To further aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible (Tr. 34). Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the c1aimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ gave clear and convincing reasons for his credibility assessment, some of which include failure to follow recommended courses of treatment (including discharge from mental health treatment for lack of commitment/motivation, Tr. 191), statements inconsistent with medical evidence, and, as noted, activities inconsistent with disabling impairment (Tr. 16-19). Each is fully supported.

Plaintiff testified she quit taking antidepressants on her own sometime during the previous year; they do not "seem to make that much difference" (Tr. 296-297). The treatment records indicate the opposite. In January of 2005, plaintiff told Dr. Gould she wanted to start prozac because two years earlier it helped with depression (Tr. 181). She "feels her affect and

insomnia continue to improve" (Tr. 179)(May 3, 2005). After restarting prozac [plaintiff] feels she has more energy and improved sleep (Tr. 175)(January 19, 2006).

The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

The ALJ's credibility assessment is fully supported by the record. The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ's assessment of credibility and of the contradicted opinions of some of the psychologists and therapists is without error and fully supported by the evidence, including plaintiff's testimony she cannot work because she is responsible for family members.

**B. Steps four and five**

Plaintiff contends the ALJ failed to determine whether her past work as a part-time kitchen helper was relevant work (Ct. Rec. 23 at 17-18). Because the ALJ found at step one plaintiff had not engaged in substantial gainful activity since 1985 (although it appears he meant 1995), the ALJ determined plaintiff's earnings as a kitchen helper were at an amount less than SGA. Even if the Court assumes for the sake of argument the ALJ erred at step four, his alternative step five analysis is fully supported by the record. Because the ALJ included all limitations supported by the evidence, as discussed, he did not commit error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 22)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 25th day of January, 2010.

s/ James P. Hutton
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 16 -